IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00290-REB-CBS

VALERIE ARNOLD,

        Plaintiff,

v.

CITY AND COUNTY OF DENVER,

        Defendant.

---

RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Magistrate Judge Shaffer

       This matter comes before the court on Defendant City and County of Denver's Motion for Summary Judgment (doc. #65), filed on November, 10 2014.   Also before the court is Plaintiff Valerie Arnold's Motion for Partial Summary Judgment (doc. #91), filed on November 12, 2014.   These motions were referred to the Magistrate Judge pursuant to the Order of Reference (doc. #6) dated February 6, 2014, Amended Order of Reference (doc. #88) dated November 12, 2014, and Memoranda (doc. #89 and #92) dated November 12, 2014.   This court has carefully considered the motions and related briefing, the entire case file, the comments offered by the parties during the April 3, 2014 Scheduling Conference, September 18, 2014 Telephone Discovery Conference, November 7, 2014 Telephone Status Conference, and December 12, 2014 Telephone Status Conference, and applicable case law.   For the following reasons, I recommend that both Motions be denied.

## FACTUAL ALLEGATIONS

Ms. Arnold, a *pro se* plaintiff, filed this lawsuit against her former employer, the City and County of Denver ("the City" or "Defendant"), claiming that her supervisor's disparate treatment of her constituted gender discrimination prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).  Plaintiff also claims that her supervisor retaliated against her when she pursued claims of discrimination.  Plaintiff seeks injunctive relief, damages associated with the loss of her job, compensatory damages, attorney fees, and interest.[1]

Plaintiff was employed by the City as a Deputy Monitor for the Office of the Independent Monitor ("OIM") from August 31, 2007 until January 7, 2011.  The OIM is a City agency and provides oversight for the Denver Police and Sheriff Departments.  (Doc. #17 at ¶ 4).  A primary purpose of the OIM is to oversee investigations into "critical incidents," such as officer shootings or the death of an arrestee or detainee while in custody.  There are approximately twelve critical incidents each year.  During the period in question, the OIM employed a male supervisor, Richard Rosenthal, a male Senior Deputy Monitor, Gregg Crittendon, and Plaintiff.  The staff positions are at-will.  At least one of the OIM staff must respond when a critical incident occurs, and Rosenthal "preferred to have two people on-call and able to roll out to a critical incident if possible."  (Doc. #65 at p. 4).  Therefore, Rosenthal required that OIM staff be "on-call" twenty-four hours a day, seven days a week, unless he or she requested to be "off-call."[2]

---

[1] Specifically, Plaintiff asks the court to permanently enjoin Denver from "discriminating or retaliating against [her] on any basis that is forbidden by applicable law," as well as order Denver "to promulgate and adhere to a policy prohibiting unlawful gender discrimination and retaliation and implement training relating to same" and "pay financial damages to [her] to make her whole, including, but not limited to back pay, front pay, pay increases, bonuses, insurance, lost benefits, including lost retirement benefits, and other financial losses."  (Doc. #1 at p. 25).

[2] While on-call, OIM staff were required to carry a City-issued cell phone and could not travel beyond certain geographic boundaries or consume alcohol or certain medication.  (*See* Doc. #17 at ¶¶ 30, 36, 37, 40, 41, 42).

Allegations of Discrimination

Plaintiff claims that Rosenthal discriminated against her by permitting Crittendon to be off-call every other weekend when he denied Plaintiff a similar schedule.  The parties agree that Plaintiff was expected to be on-call constantly during the first six months after accepting the position of Deputy Monitor.  (*See* Doc. #17 at ¶ 29).  Plaintiff alleges that she continued to be on-call around the clock after the initial six-month period, and even responded to critical incidents by herself.  (*See* Doc. #91 at ¶ 11).  Plaintiff also asserts she was not required to be on-call according to her official job description (*see* doc. #91 at ¶ 12), though admits the City advised during her interview that the Deputy Monitor position involved "rolling out to critical incidents including police involved shootings."  (Doc. #91 at p. 21, ¶ 6).

Mr. Crittendon became a father in June 2008.  At this time, he began using leave under the Family Medical Leave Act (FMLA) to spend time with his son.  He intermittently used FMLA leave until June 2009.  (*See* Doc. #65 at p. 2).  In June 2009, Crittendon requested and received authorization from Rosenthal to work a "9/80" schedule, which allowed him one additional day off of work every two weeks.  Rosenthal generally allowed Crittendon to be off-call on this day.  (*See* Doc. #65 at p. 2; Doc. #91 at ¶ 17).  Crittendon used this schedule to "spend time with his son in accordance with the court-ordered parenting schedule."  (Doc. #65 at p. 2; Doc. #65-5 at ¶ 14).[3]

Plaintiff first requested an off-call schedule in February 2008, after she completed her six-month training period.  (*See* Doc. #17 at ¶ 46).  She never requested a "9/80" schedule.  (*See* Doc. #105-3 at p. 18, ¶ 4).  Though Rosenthal approved each of Plaintiff's requests for specific off-call dates, except for one, over a period exceeding three years (*see* Doc. #65-1 at ¶ 14), he did

---

[3] The City specifies that Crittendon was allowed to see his son every other weekend per court order and was required to travel to Glenwood Springs, Colorado, where his son lived.  (Doc. #65 at p. 2, Doc. #65-5 at ¶¶ 7, 9, 11).

not permit Plaintiff to have a schedule that provided for regular time off-call.  (*See* Doc. #17 at ¶¶ 47, 52, 53, 54, 55).  Rosenthal also did not have a schedule that provided for regular time off-call.  (*See* Doc. #65-1 at ¶ 16).

Plaintiff again requested an off-call schedule during her performance review in December 2009, and Rosenthal agreed to "give it a try."  (*See* Doc. #91 at ¶ 25, Doc. #17 at ¶ 82).  Rosenthal hung a paper calendar outside of his office and indicated on the calendar the days he intended to be off-call.  Crittendon likewise marked the days he wished to be off-call.  (*See* Doc. #17 at ¶¶ 84, 85).  Plaintiff attempted to mark the calendar to show herself as off-call every other weekend, alternating with Crittendon.  (*See* Doc. #17 at ¶ 87).  Rosenthal intervened and explained that he could not allow her to be off-call every other weekend.  *Id.*  He also told Plaintiff that his decision regarding a regular off-call schedule for her "was final and further discussion was not warranted."  (Doc. #17 at ¶ 91).

On August 20, 2010, Plaintiff requested via email to be off-call over the 2010 Labor Day weekend, after consulting the paper calendar and confirming that neither Crittendon nor Rosenthal had requested to be off-call during that time.  (*See* Doc. #17 at ¶¶ 92, 93, 94; Doc. #65-11 at pp. 1-3).  After submitting her request, Plaintiff learned that Crittendon had also requested to be off-call that weekend.  Rosenthal asked in his response email that Plaintiff and Crittendon confer with each other to determine whether they could share off-call time that weekend so as to not require him to be the sole staff member on-call.  Rosenthal expressed frustration when Plaintiff included Crittendon on the email chain as opposed to addressing the question in person, and ultimately reprimanded her for not confirming with Crittendon that he would be on-call that weekend before informing Rosenthal that she intended to be off-call.

Rosenthal then stated in an email to Plaintiff that they would discuss the issue at her performance review scheduled for the following week.  (*See* Doc. #65-11 at pp. 1-3).

On September 10, 2010, Ms. Arnold complained to the Human Resources Supervisor, Peter Garritt, that Rosenthal had refused to provide her with a regular off-call schedule.  (*See* Doc. #17 at ¶ 99).   Plaintiff and Rosenthal subsequently attended two mediation sessions conducted by Community Mediation Concepts.  (*See* Doc. #17 at ¶ 100).[4]   The efforts at mediation were unsuccessful.

In 2010, Mr. Crittendon was off-call 78 days as a result of his regular schedule.  He was not required to use sick, vacation, or FMLA leave to be off-call these days.  (*See* Doc. #91 at p. 6, ¶ 27 and p. 25, ¶ 4).   In the same year Plaintiff was off-call 40 days, which included vacation and sick leave.  (*See* Doc. #91 at p. 6, ¶ 28, Doc. #17 at ¶ 66).

<u>Allegations of Retaliation</u>

On September 30, 2010, Mr. Rosenthal held Plaintiff's annual performance review. Rosenthal rated Plaintiff "below expectation" in the categories of accountability and job duties but awarded her an overall rating of "successful."[5]  (Doc. #17 at ¶¶ 104-105; Doc. 65-10 at pp. 4, 7).   Rosenthal expressed dissatisfaction over Plaintiff's management of "ten of the hundreds of cases" she handled each year.  (Doc. #17 at ¶ 105).  He had previously counseled Plaintiff on the deficiencies in three of those cases, but not the other seven.  *Id.*  Plaintiff alleges Rosenthal scrutinized and "discovered" issues with those seven cases in the days following her request to be off-call over the Labor Day weekend.  (Doc. #103 at p. 8).  Plaintiff had received an overall rating of "exceptional" in 2008 and "successful" in 2009.  (Doc. #17 at ¶ 105).  Following the

---

[4] The City admits that OIM referred police-citizen disputes to Community Mediation Concepts for resolution, that Rosenthal appeared with Community Mediation Concepts on various training panels, and that Rosenthal helped Community Mediation Concepts procure contracts with other municipalities.  (Doc. #17 at ¶ 101).

[5] A "successful" rating means "consistently achieved performance standards."  (Doc. #65-9 at p. 8, TR:145:5-23, 146:2-147:2).

performance review, Plaintiff asked to make rebuttal comments in the electronic document containing Rosenthal's remarks. Rosenthal refused the request and instructed Plaintiff to provide her comments in a separate document. (*See* Doc. #17 at ¶ 107). Plaintiff asked that they call Human Resources for guidance on whether she could include her rebuttal comments in the electronic document, and Rosenthal responded that she was being insubordinate. (Doc. #17 at ¶ 108). Plaintiff then emailed Mayor Hickenlooper's Chief of Staff, Roxane White, with a complaint. Ms. White responded by scheduling a meeting for Plaintiff and Jack Finlaw, Mayor Hickenlooper's Deputy Chief of Staff.

On October 5, 2010, Plaintiff met with Mr. Finlaw. She alleges she used the meeting to complain about the discrimination and retaliation she had suffered. The City admits Plaintiff alleged to Mr. Finlaw that Rosenthal had discriminated against her by not providing an off-call schedule. (*See* Doc. #17 at ¶ 112). Mr. Finlaw and Plaintiff spoke again by telephone on October 8, 2010. (Doc. #17 at ¶ 116). On October 13, 2010, Mr. Finlaw and Assistant City Attorney Andrea Kershner met with Plaintiff. Ms. Kershner reiterated Rosenthal's position that Plaintiff could not have a regular off-call schedule. (*See* Doc. #17 at ¶ 118). Mr. Finlaw wrote a letter to Plaintiff dated October 13, 2010, in which he stated he had found "no evidence of employment discrimination by [Rosenthal]. It appears that Mr. Rosenthal's disparate treatment of you and your male colleague with respect to the OIM's on-call schedule relates to the fact that your male colleague is a single parent with child care issues and is not based upon either of your genders." (Doc. #65-12; Doc. #17 at ¶ 119).

Mr. Rosenthal informed Plaintiff on October 13, 2010 that she would no longer attend the Citizen Oversight Board meetings with him. (Doc. #17 at ¶ 122). On October 21, 2010, Rosenthal announced his intention to revise the OIM Critical Incident Rollout Protocol to allow

the Senior Deputy Monitor and Deputy Monitor to each be off-call one weekend per month, effective January 1, 2011. (Doc. #17 at ¶¶ 123-124). Plaintiff alleges that during this time, Rosenthal increased her workload, refused to replace her printer, and generally became inaccessible to her. (*See* Doc. #1 at ¶¶ 127, 128, 130, 138). The City argues that everyone at OIM experienced a heavier workload at that time, and that Plaintiff had access to a shared printer in the OIM office and Rosenthal emailed the office manager about replacing Plaintiff's printer. (Doc. #17 at ¶ 132; Doc. #65-20; Doc. #65-19). The City generally denies that Rosenthal became inaccessible to Plaintiff. (Doc. #17 at ¶ 138). Plaintiff retained counsel in November 2010. Her attorney, David Lane, informed the City of his representation of Plaintiff on November 23, 2010. (Doc. #17 at ¶ 141).[6]

Mr. Rosenthal placed Plaintiff on investigatory leave on December 6, 2010. (Doc. #65-16). Plaintiff was prohibited from speaking with anyone at the City without permission from Rosenthal or accessing "any computers or computer systems owned or operated by, for or on behalf of the City and County of Denver or any of its agencies, departments, officials or employees" during this time. *Id.* On December 28, 2010, Plaintiff and her attorney attended a meeting with Rosenthal to discuss her employment.[7] Rosenthal terminated her employment with the City on January 7, 2011. (Doc. #17 at ¶¶ 146, 147; Doc. #65-13). Rosenthal stated in the termination letter that Plaintiff's job performance did not meet the standards of her position as Deputy Monitor, recalled that Plaintiff had been warned in 2009 and again in September 2010 about specific concerns regarding her performance, and listed examples of her "substandard performance and poor attitude." (Doc. #65-13). Prior to January 7, 2011, the City had not

---

[6] David Lane's law firm, Kilmer, Lane & Newman, represented the family of Marvin Booker, who had died while in custody at the Denver jail. Plaintiff was assigned to monitor the Booker case. (Doc. #65-9 at p. 5, TR:135:10-136:3).
[7] Mr. Lane acknowledged the potential conflict of interest and stepped out of the meeting. (*See* Doc. #65 at p. 8; Doc. #65-18 at ¶ 17).

formally disciplined Plaintiff or administered any verbal or written reprimands.  (Doc. #17 at ¶¶ 148-150).  At no time during Plaintiff's employment as Deputy Monitor did she receive a suspension without pay, a disciplinary reduction in pay, or a demotion.  (*See* Doc. #17 at ¶¶ 151-153).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on February 15, 2011.  The EEOC found cause regarding retaliation, and the Department of Justice issued a notice of right to sue to Ms. Arnold on November 8, 2013, following an unsuccessful conciliation.  (*See* Doc. #91 at p. 2; Doc. #17 at ¶¶ 9-12).

<u>Allegations Regarding Plaintiff's Work Performance</u>

The City alleges that Rosenthal reprimanded Plaintiff in late December 2008 and January 2009 regarding how she handled two cases.  (*See* Doc. #65 at p. 5).[8]  On March 20, 2009, Rosenthal noted concerns that Plaintiff appears "to philosophically disagree with how the office handles complaints and declinations, failing to acknowledge the need to filter complaints to ensure thorough and timely investigations on formal cases."  (Doc. #68 at p. 2).  Plaintiff alleges Rosenthal told her "she needed to learn to make him believe that her ideas were his."  (Doc. #103 at p. 6; Doc. 103-1 at ¶ 36).  Plaintiff began inferring sex discrimination as early as May 2009.  (*See* Doc. #103-1 at p. 30).

The City alleges that after the September 30, 2010 performance review, "Plaintiff's attitude and performance rapidly deteriorated."  (Doc. #65 at p. 7).  On October 26, 2010, Rosenthal directed Plaintiff to provide him with notes regarding the initial interviews of the officers regarding the Booker incident so that he might formulate questions of his own.  (*See* Doc. #65 at p. 7, Doc. #69).  By November 16, 2010, Plaintiff had not responded to this request,

---

[8] Plaintiff contends the exhibit the City relies on for its argument is inadmissible as unauthenticated.  (*See* Doc. #103 at p. 6).

prompting Rosenthal to send her a reminder email.  (*See* Doc. #69).  Plaintiff still had not responded by the November 30, 2010 staff meeting, at which Rosenthal set a new deadline of December 7, 2010.  (*See* Doc. #65 at p. 7; Doc. #65-13 at p. 2).

On December 3, 2010 at 4:28 p.m., Rosenthal notified Plaintiff by email that she was recused from monitoring the Booker investigation due to a conflict of interest or appearance of such resulting from her retainer of attorney David Lane.  (*See* Doc. #65-15).   Rosenthal instructed Plaintiff to provide him "immediately" with all materials she had related to the Booker case, including archived emails.  *Id.*  Plaintiff responded at 4:55 p.m. that she was "more than happy to comply with [his] instructions," but would need until Monday "given the lateness of the request on a Friday [sic] afternoon."  *Id.*  Rosenthal replied at 5:02 p.m. instructing Plaintiff complete the task immediately.  *Id.*  Three minutes later, Plaintiff emailed she would provide what she could "immediately lay [her] hands on," and relinquish the remainder on Monday.  *Id.* Rosenthal sent a final communication at 5:22 p.m., admonishing Plaintiff that she was not an hourly employee and directing her to complete the task before leaving for the night.  *Id.*  The City alleges that Plaintiff did not appear at the OIM office on Monday, December 6, 2010 until noon.  When she arrived, Rosenthal placed her on investigatory leave.

Plaintiff alleges that Rosenthal canceled the November 30 staff meeting and never responded to her email asking whether she should attend a meeting regarding the Booker case. (*See* Doc. #103 at p. 10; Doc. #103-1 at p. 65).  She alleges his requests regarding the Booker case required her to review "a massive amount of information," and that she and Rosenthal "ultimately agreed Plaintiff would supply the information on 12/7/10."  (Doc. #103 at p. 10). Plaintiff provided Rosenthal with "a large stack of Booker materials" before she left the OIM office on December 3, 2010.  *Id.*  *S*he visited the Denver Police Department the following

Monday morning and advised the OIM office of her plans in a phone message. *See id.* Plaintiff claims she was ultimately unable to comply with the December 7 deadline because she was recused from the case and placed on investigative leave.

## PROCEDURAL HISTORY

Ms. Arnold filed her Complaint on January 31, 2014. (Doc. #1). At the time, she was represented by attorney Rick Dindinger. Service was effected on the City on February 5, 2014 (doc. #7). The City filed an Answer on February 25, 2014. (Doc. #10). This court held a Scheduling Conference on April 3, 2014, at which a February 9, 2015 trial date was set before District Judge Blackburn. (*See* Doc. #14). The City filed an unopposed Amended Answer on April 8, 2014, which asserted the City's belief that Plaintiff had acquired or duplicated files belonging to OIM in violation of the office's Standards of Professional Conduct. (*See* Doc. #16, #17, and #18). On May 5, 2014, Mr. Dindinger moved without Ms. Arnold's consent to withdraw his appearance as her counsel. (*See* Doc. #19). Defendant did not oppose this Motion. (*See* Doc. #21). Plaintiff responded to Mr. Dindinger's Motion on May 16, 2014 clarifying that she would not oppose his withdrawal (doc. #22). This court granted Mr. Dindinger's motion on May 19, 2014 (doc. #24).

On July 21, 2014, Plaintiff filed a Motion for Judgment on the Pleadings (doc. #27), which she later withdrew (*see* doc. #108). The City filed an unopposed Motion for Protective Order on July 28, 2014 (doc. #30), which this court granted the following day. (*See* Doc. #32 and #33). On August 14, 2014, the City filed a combined Response to Plaintiff's Motion for Judgment on the Pleadings and Cross-Motion for Partial Summary Judgment. (Doc. #34). On August 26, 2014, Plaintiff filed a Motion to Strike Defendant's Response as untimely. (Doc. #36). On August 29, 2014, Plaintiff filed a Motion to Strike Defendant's Certificate of Service.

(Doc. #38).  Defendant responded to both motions on September 2, 2014.  (Doc. #40).  Plaintiff filed her Reply on September 5, 2014.  (Doc. #41).

On September 8, 2014, Plaintiff requested an extension by which to file a Response and/or Reply (doc. #42), which this court granted on September 10, 2014 (doc. #44).  Plaintiff filed her Reply on September 15, 2014 (doc. #45).  On September 18, 2014, this court held a Telephone Discovery Hearing at which the undersigned ordered the parties to amend their discovery requests and responses, denied Plaintiff's Motions to Strike, and granted Defendant an extension by which to file a Reply in support of its combined motion and response.  (*See* Doc. #47).  Defendant filed its Reply on October 6, 2014.  (Doc. #48).  On October 17, 2014, Defendant filed a Motion for Leave to File Excess pages in support of its Motion for Summary Judgment.  (Doc. #49).

By order dated October 20, 2014, Judge Blackburn struck the City's combined Motion and Response and Reply to the extent each document included "facts and argument in support of the motion for summary judgment of the defendants," in violation of D.C.Colo.LCivR 7.1(d).  (Doc. #50).  Judge Blackburn granted the City's Motion for Leave to File Excess Pages to the extent it sought to file a separate motion for summary judgment.  *Id.*

On October 29, 2014, Plaintiff moved to disqualify the City's attorney, Kristen Merrick, for comments exchanged at Plaintiff's September 29, 2014 deposition, among other things.  (Doc. #52).  Several days later, Plaintiff filed a Motion for Extension of Time for File a Motion for Summary Judgment, to which the City filed a Response on November 6, 2014 along with a Conditional Motion for Extension of Time to File its Motion for Summary Judgment.  (Doc. #54, #57, #58, and #60).  This court held a Telephone Status Conference on November 7, 2014, at which the undersigned denied Plaintiff's Motion to Disqualify Ms. Merrick and denied

Plaintiff's Motion for an Extension. (*See* Doc. #64). This court subsequently denied Defendant's Conditional Motion for an Extension of Time. (Doc. #90).

On November 10, 2014, the City filed a Motion for Summary Judgment (doc. #65) supported by thirty-one exhibits, ten of which were filed under restriction. (*See* Doc. #66-#76 and #93). Plaintiff filed a Motion for Partial Summary Judgment on November 12, 2014. (Doc. #91). Two days later the City moved to strike Plaintiff's Motion as untimely. (*See* Doc. #94). On November 17, 2014, Plaintiff moved to quash Defendant's subpoenas for failure to give proper notice. (*See* Doc. #96). Plaintiff filed a Response to Defendant's Motion to Strike on November 20, 2014 (doc. #99), and a Motion to Vacate and Continue the Trial Date on November 24, 2014 (doc. #100). On November 25, 2014, the City filed a Response to Plaintiff's Motion to Quash and a Reply in support of its Motion to Strike. (Doc. #101 and #102). Plaintiff filed a Response to Defendant's Motion for Summary Judgment on December 1, 2014 and a Motion for Leave to Restrict Certain Exhibits in support thereof on December 5, 2014. (Doc #103 and #106). Jessica Runyan Allen entered her appearance for the City on December 2, 2014 (*see* Doc. #104), and the City filed its Response to Plaintiff's Motion for Partial Summary Judgment on December 4, 2014. (Doc. #105). Plaintiff filed a Reply in support of her Motion to Quash on December 8, 2014. (Doc. #107).

This court held a Telephone Status Conference on December 12, 2014, at which the undersigned denied Defendant's Motion to Strike Plaintiff's Motion for Partial Summary Judgment, denied Plaintiff's Motion to Quash Defendant's subpoenas, deemed confidential the materials produced in response to the subpoenas, and granted Plaintiff's oral Motion to Withdraw her Motion for Judgment on the Pleadings. (*See* Doc. #108). The City filed a Response opposing Plaintiff's Motion to Vacate the trial later that day. (*See* Doc. #109).

12

Plaintiff filed a Reply in support of her Motion for Partial Summary Judgment on December 17, 2014.  (Doc. #110).   The City filed a Reply in support of its Motion for Summary Judgment on December 18, 2014.  (Doc. #111).

## STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter– Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994).   "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"   *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)).   Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson,* 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party.  *Anderson,* 477 U.S. at 248.   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Service Com*, 391 U.S. 253, 289 (1968)).

## ANALYSIS

### A.    Title VII Discrimination

Ms. Arnold claims that Mr. Rosenthal discriminated against her on the basis of her sex when he approved an office schedule that allowed for Mr. Crittendon to be off-call approximately two weekends per month.   Plaintiff claims the schedule resulted in disparate treatment because Rosenthal declined to schedule regular off-call time for her.

Title VII prohibits discrimination against any individual "with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Harris v. Forklift Sys, Inc.*, 510 U.S. 17, 21 (1993) (citing 42 U.S.C. § 2000e–2(a)(1)).   "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998) (quoting *Harris*, 510 U.S. at 25).   Where direct evidence of a Title VII violation is missing, a plaintiff may rely on circumstantial evidence.   *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   Under the burden-shifting *McDonnell Douglas* test, the claimant must establish a prima facie case of discrimination: (1) Plaintiff belongs to a protected class; (2) she suffered adverse employment action; and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination.   *See E.E.O.C. v. PNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007).   *See also Barlow v. C.R. England, Inc.,* 703 F.3d 497, 505 (10th Cir. 2012) ("[P]laintiff's articulation of his prima facie case may vary depending on the nature of the claim," however, "[t]he critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination.").   If Plaintiff demonstrates a prima facie case,

Defendant must articulate a nondiscriminatory reason for the adverse employment action.  *See Barlow*, 703 F.3d at 505.  Plaintiff may then present evidence to show that Defendant's rationale is pretextual.  *See Fye v. Okla. Corp. Comm'n,* 516 F.3d 1217, 1227 (10th Cir. 2008).  "Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citing *See Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997)).

Adverse action is defined in the Tenth Circuit as conduct that has a materially adverse impact on the employee's job status. *Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1230 (10th Cir. 2004).  Examples of material or significant change include "termination, failure to promote, demotion."  *Id.*  The Supreme Court has defined adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998).  *See also Box v. Principi*, 442 F.3d 692, 696 (8th Cir. 2006) ("There must be a material change in employment status-a reduction in title, salary, or benefits.") (internal quotation marks and citations omitted).  The alleged adverse action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Brown v. City of Syracuse,* 673 F.3d 141, 150 (2d Cir. 2012).  The Fourth Circuit has held that without a reduction of compensation, negative change in job title or responsibility, or loss of opportunity for promotion "reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (internal quotation marks and citation omitted).  The Seventh Circuit has similarly found that no materially adverse

employment action existed in an age discrimination suit despite plaintiff's allegations that the employer assigned her the most difficult work assignments and assignments outside of her job responsibilities, required her to complete coworkers' assignments, required her to work varying shifts instead of a regularly scheduled shift, forced her to travel farther in comparison to her coworkers by transferring her to a distant office, denied her annual leave, issued her letters of warning, and subjected her to unreasonable demands. *See Griffin v. Potter*, 356 F.3d 824, 828 (7th Cir. 2004).

Ms. Arnold argues that she has presented direct evidence of discrimination because Mr. Rosenthal admits to granting a regular off-call schedule to only Mr. Crittendon. This court disagrees. Plaintiff has not produced a facially discriminatory policy promulgated by the City nor has she alleged statements by Rosenthal that constitute direct evidence of discrimination. *See Trans World Airlines v. Thurston*, 469 U.S. 111, 121 (1985) (holding that an explicit, mandatory age requirement was direct evidence of age discrimination); *see also Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) ("if the content and context of a statement allow it to be plausibly interpreted in two different ways—one discriminatory and the other benign—the statement does not qualify as direct evidence) (citing *Riggs v. AirTran Airways, Inc.,* 497 F.3d 1108, 1118 (10th Cir. 2007)). Therefore, her claim for discrimination must be analyzed pursuant to the *McDonnell Douglas* test.

The essence of Plaintiff's claim is that the disparate schedules required that she, but not Crittendon, deliberate how to use annual vacation and sick leave. *See Ellerth*, 524 U.S. at 761 (adverse action is "a decision causing a significant change in benefits"). She claims she is a member of a protected class by virtue of being female. She alleges she suffered adverse employment action in the sense that she was on-call twenty-four hours a day, seven days a week

unless she specifically requested to be off-call, and she was required at times to use sick leave and vacation leave to secure off-call hours. Plaintiff further alleges that Rosenthal allowed Crittendon 78 off-call days in 2010, for which Crittendon was not required to use vacation, sick, or FMLA leave. (*See* Doc. #91 at p. 6, ¶ 27 and p. 25, ¶ 4; Doc. #17 at ¶ 51). By contrast, Plaintiff was allowed 40 off-call days in 2010, which included "sick days, vacation days, and 11 days for surgery." (Doc. #17 at ¶ 66; *see* Doc #91 at p. 6, ¶ 28). Plaintiff also alleges that in December 2009, Rosenthal ordered a paper calendar on which he and Crittendon marked the days they intended to be off-call, but Rosenthal prevented Plaintiff from similarly claiming off-call time instructing that she "could only use the calendar to check what dates neither man claimed" prior to submitting her requests. (Doc. #103 at p. 8; Arnold Declaration, Doc. #103-1 at ¶ 25; Doc. #17 at ¶¶ 82-87).

The City argues that Plaintiff is not a member of a protected class within the context of this lawsuit because she has alleged parenthood discrimination rather than gender discrimination. However, Defendant admitted in its Amended Answer that Plaintiff is a member of a protected class. (*See* Doc. #17 at ¶ 171). Furthermore, Plaintiff attests that Mr. Rosenthal permitted Mr. Crittendon to take regularly scheduled weekends off-call before his child was born, and that the off-call schedule continued during the six weeks that Crittendon's son was out of the country. (*See* Doc. #103 at pp. 3, 4, Doc. #103-1 at ¶¶ 4, 13 ("Mr. Crittendon's son was born in June 2008. Mr. Crittendon had already been generally off call from September '07 until that time"), *but see* Crittendon Declaration, Doc. #65-5 at ¶ 3 (attesting that he was "on-call at all times unless [he] had permission from Mr. Rosenthal to be 'off-call.'")[9] I find that Plaintiff has alleged discrimination based on her gender and that she is a member of a protected class.

---

[9] The City argues the court should disregard paragraph four of Plaintiff's affidavit on the basis it contains inadmissible hearsay. (Doc. #111 at p. 1). On motion for summary judgment, the court can consider evidence that

The City argues next that Plaintiff's constant on-call schedule was merely a function of the job, and it disputes that the schedule qualifies as adverse employment action. *See Calvin v. SMG*, No. 13-cv-00067-CMA-BNB, 2014 WL 321170, at *7 (D. Colo. Jan. 29, 2014) ("a scheduling dispute, without evidence of a material change in responsibilities or employment status, is not an adverse employment action") (quoting *Brown v. Georgetown University Hospital Medstar Health,* 828 F. Supp. 2d 1, 8 (D.D.C. Mar. 29, 2011)).   Defendant also claims that Plaintiff's off-call time was disproportionately low in 2010 because she "was building a case against the City" and did not request any time off from September 5, 2010 through December 6, 2010.  (Doc. #111 at p. 5).  "Technically, [Plaintiff] had 65 days off-call in 2010, as she was on paid leave from December 7-31, 2010."  (Doc. #105 at p. 12).  The City denies that Rosenthal told Plaintiff to consult the paper calendar to determine what days were available for her to request off-call, and that Rosenthal only prevented Plaintiff from claiming alternate off-call weekends with Crittendon.  (Doc. #17 at ¶¶ 87-88).

Ms. Arnold claims that an inference of discrimination is demonstrated by the fact that Mr. Rosenthal permitted an off-call schedule to Mr. Crittendon "for personal reasons."  (Doc. #17 at ¶ 118).  Plaintiff can establish evidence of an inference in various ways, such as "actions or remarks made by decisionmakers," "preferential treatment given to employees outside the protected class," or "more generally, upon the timing or sequence of events leading to [the adverse action]."  *Plotke v. White,* 405 F.3d 1092, 1101 (10th Cir. 2005).  A small amount of proof may create an inference of discrimination. *See Orr v. City of Albuquerque,* 417 F.3d 1144,

---

would be admissible at trial. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).  Paragraph four does not constitute hearsay. *See* Fed. R. Evid. 801(d)(2)(D).  The City further argues the court should disregard paragraph thirteen on the basis it is "self-serving, conclusory, and/or not based on personal knowledge."  (Doc. #111 at p. 1).  This paragraph contains information regarding Crittendon's work schedule after his son was born.  Plaintiff has personal knowledge of this information considering she and Crittendon worked together in a three-person operation during that time.  Furthermore, these disputed facts are not material because the City admits that Plaintiff is a member of a protected class.

1149 (10th Cir. 2005)).  The City acknowledges that Rosenthal permitted Crittendon two off-call weekends per month for personal reasons, but explains that the impetus was to allow him "to spend time with his young son … in accordance with a court-ordered visitation schedule."  (Doc. #17 at p. 31; Doc. #105 at p. 15; Rosenthal Declaration, Doc. #65-1 at ¶ 8; Crittendon Declaration, Doc. 65-5 at ¶ 8).  "As a parent himself, Mr. Rosenthal was sympathetic to another parent's situation, and Mr. Crittendon happened to be male."  (Doc. #105 at p. 15).  *See Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279 (10th Cir. 1999) (recognizing that the employer's burden in articulating a non-discriminatory reason for the adverse action is similarly "not onerous.").  After his son's birth, Crittendon requested a "9/80" schedule that would allow him to work eighty hours in nine days.   (Rosenthal Declaration, Doc. #65-1 at ¶ 9; Crittendon Declaration, Doc. #65-5 at ¶ 14).  Crittendon used "intermittent FMLA for bonding with his son" between June 2008 and June 2009.  (Doc. #65 at p. 14).  Beginning in June 2009, Rosenthal "made an exception" and permitted Crittendon to take every other weekend off-call as part of his 9/80 schedule.  *Id.*  Additionally, Defendant argues that Rosenthal needed to maintain a flexible schedule and explained to Plaintiff that if she alternated off-call weekends with Crittendon, Rosenthal would then be required to remain on-call every weekend.  (Rosenthal Declaration, Doc. #65-1 at ¶¶ 12-13).  Finally, Plaintiff never requested a 9/80 schedule.

Plaintiff argues that Defendant's rationale is pretextual, claiming that Rosenthal could have created a schedule that provided regular off-call time for both Crittendon and Plaintiff but chose not to.  Furthermore, Plaintiff argues, Rosenthal ultimately created such a schedule eight days after Plaintiff met with City officials to discuss her discrimination claim, and Rosenthal hired Crittendon's "best male friend" to replace her.  (*See* Doc. #103 at pp. 16-17; Doc. #91 at p. 17; Doc. #17 at ¶ 123).  Finally, Plaintiff claims that Rosenthal was under no legal obligation to

permit Crittendon off-call time. (*See* Doc. #91 at p. 5, ¶ 22 and at p. 22, ¶ 2; Doc. #103 at p. 9). A finding of pretext requires "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." *Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). Evidence of pretext may include, but is not limited to the employer's prior treatment of plaintiff, "disturbing procedural irregularities (e.g., falsifying or manipulating ... criteria)," and "the use of subjective criteria." *Garrett*, 305 F.3d at 1217 (quoting *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1328 (10th Cir. 1999)).

I find that a question of fact exists as to whether the denial of regular off-call time constitutes a change in benefits such as to create adverse action. I further find that reasonable jurors could disagree as to whether Rosenthal acted with discriminatory intent in authorizing a regular off-call schedule for Crittendon and withholding a similar schedule from Plaintiff.

## B.     Retaliation

Title VII retaliation claims are also analyzed within the framework of *McDonnell Douglas*. 411 U.S. at 802-04. *See Morgan*, 108 F.3d at 1323. To make out a prima facie case of retaliation, Ms. Arnold must show: (1) she engaged in protected activity; (2) the City took action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action. *Carney v. City and County of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008) (quoting *Metzler v. Fed. Home Loan Bank of Topeka,* 464 F.3d 1164, 1171 (10th Cir. 2006) (footnote omitted)). "[A] causal connection is established where the plaintiff presents 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *MacKenzie*

*v. City & County of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005) (quoting *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1318 (10th Cir. 1999)).   Once the plaintiff makes a prima facie showing of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. *Coors Brewing Co.*, 181 F.3d at 1178 (citing *Morgan*, 108 F.3d at 1323).  If the employer does so, the burden shifts back to plaintiff to show "a genuine issue of material fact as to whether the employer's proffered reason for the challenged action is pretextual, i.e., unworthy of belief."  *Coors Brewing Co.*, 181 F.3d at 1178.   A meritorious retaliation claim survives even if the underlying discrimination claim fails. *Sanchez v. Denver Public Schools*, 164 F.3d 527, 533 (10th Cir. 1998) (citing *Jeffries v. Kansas,* 147 F.3d 1220, 1232 (10th Cir. 1998)).  *See also Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 53-54 (2006) (Scope of Title VII retaliation provision is broader than that of Title VII's substantive discrimination provision).

The City admits that Ms. Arnold engaged in protected activity by raising complaints of gender discrimination and retaliation.   (Doc. #17 at ¶ 161).   The City likewise admits that Plaintiff's termination constitutes adverse action.  (Doc. #17 at ¶ 166).  *See Coors Brewing Co.*, 181 F.3d at 1178 ("We conclude that Plaintiff suffered adverse employment action when Defendant terminated her.") (citing *Roberts v. Roadway Express, Inc.,* 149 F.3d 1098, 1104 (10th Cir. 1998)).

Plaintiff claims the causation element is met because of the temporal proximity between her complaints and her termination.   "A retaliatory motive may be inferred when an adverse action closely follows protected activity." *Coors Brewing Co.*, 181 F.3d at 1179 (citations omitted).  The Tenth Circuit has held that a one and one-half month period between protected activity and adverse action may alone establish causation.  *See id.* (citing *Ramirez v. Oklahoma*

*Dept. of Mental Health,* 41 F.3d 584, 596 (10th Cir. 1994)). However, a three-month period, standing alone, is insufficient to establish causation. *See id.* (citing *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997)). On September 30, 2010, Plaintiff asked for a meeting with the Mayor's Chief of Staff to discuss her allegations of discrimination and retaliation. Two unsuccessful mediation sessions with Rosenthal followed. Plaintiff alleges that throughout that fall, Rosenthal increased Plaintiff's "already large workload," canceled meetings "where important work was normally done," refused to replace her broken printer, and generally became inaccessible to her. (Doc. #103 at p. 9, Doc #103-1 at p. 9, ¶¶ 52, 53 and pp. 59-63; Doc. #103-2 at p. 8).[10] Her attorney sent the City a letter dated November 23, 2010 informing it of Plaintiff's possible claim of sex discrimination. (Doc. #17 at ¶141). Rosenthal placed her on investigatory leave on December 6, 2010, and terminated her employment on January 7, 2011.

The City argues Mr. Rosenthal cancelled staff meetings when more pressing business arose, and instructed both Plaintiff and Crittendon that he did not wish to "double-staff" outside meetings so as to give both of them "a little more time to complete [their] current work," recognizing that everyone in the office had experienced an increased workload. (*See* Doc. #65-20). Rosenthal asked the OIM office manager to investigate replacing Plaintiff's broken printer (*see* doc. #65-19), and denies making himself inaccessible to Plaintiff. Finally, Rosenthal contends he placed Plaintiff on investigatory leave and ultimately fired her because of her poor performance, including her failure to respond to his request for notes regarding the Booker interviews and additional questions that should be posed to the officers, her failure to provide him with the Booker materials when requested on December 3, 2010, her attempt to remove

---

[10] The City argues the court should disregard paragraphs 52 and 53 of Plaintiff's affidavit as "self-serving, conclusory, and/or not based on personal knowledge." (Doc. #111 at p. 1). Even if the City is right, its argument affects the weight rather than the admissibility of the evidence. Furthermore, this testimony merely buttresses the causation prong, which is already satisfied by temporal proximity. *See Garrett*, 305 F.3d at 1221 (reminding employer that the standard for proving a prima facie case of retaliation "is low.").

confidential documents from the OIM office during her investigatory leave, and her "substandard quality of work." (Doc. #65 at p. 17; Doc. #65-16, #65-19, and #65-17).

Ms. Arnold claims Rosenthal's explanations are pretextual. She asserts that she and Rosenthal agreed to extend the deadline regarding the Booker questions to December 7, 2010 and that Rosenthal sent the final email communication demanding the Booker materials after Plaintiff had left her office for the weekend. Plaintiff denies consciously removing confidential documents from the office when she was placed on investigatory leave, and alleges that Rosenthal began taking issue with the quality of her work only after she accused him of discrimination.

Courts "must generally defer to an employer's decisions on the quality of an employee's work, not the subjective beliefs of the affected employee." *Juarez-Galvan v. United Parcel Service, Inc.*, 572 Fed. Appx. 619, 622 (10th Cir. 2014) (citing *Furr v. Seagate Tech., Inc.,* 82 F.3d 980, 988 (10th Cir. 1996). Moreover, Defendant need not show that Rosenthal's reasons for firing Plaintiff were wise, fair, or correct (*Young v. Dillon Cos.,* 468 F.3d 1243, 1250–51 (10th Cir. 2006)). The test is whether Rosenthal had a good faith belief in his stated nondiscriminatory reasons. *Hardy v. S.F. Phosphates Ltd.,* 185 F.3d 1076, 1080 (10th Cir. 1999). Plaintiff has presented more than mere conjecture regarding pretext; and the City has offered evidence of Rosenthal's genuine belief that Plaintiff performed poorly and was insubordinate. Accordingly, I find a genuine question of material fact exists as to whether Plaintiff's termination was the result of retaliation.

## CONCLUSION

For the forgoing reasons, this court RECOMMENDS that Defendant's Motion for Summary Judgment (doc. #65) and Plaintiff's Motion for Partial Summary Judgment (doc. #91) be DENIED.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th

24

Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 19th day of December, 2014.

BY THE COURT:

s/Craig B. Shaffer_____
United States Magistrate Judge